**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

ANNA JULIA MARASSI,                          :
           Complaint,                       :
                          :        Civ. No. _____

v.                                           :

                          :        JURY TRIAL DEMANDED
ELECTROFORMINGS, LLC;                        :
ALPHACOIN, LLC; and                          :
GUY ROSATO                                   :        FEBRUARY 10, 2023
           Defendants                      :
_____

## **COMPLAINT**

### I.  **PRELIMINARY STATEMENT**

1.      This is Julia Marassi ("Ms. Marassi" and/or "Plaintiff") Complaint against her former

employer Electroformings, LLC ("Electroformings" and/or "Defendant") and AlphaCoin, LLC

(Alphacoin and/or "Defendant") and Guy Rosato ("Rosato" and/or "Defendant") for: **(1)**

unlawfully discriminating against her based on her gender and for creating and maintaining a

hostile work environment in violation of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et.seq.

("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"), C.S.G.A.§§46a-

60(a)(1); **(2)** retaliation pursuant to Title VII, 42 U.S.C. § 1981 and CFEPA; **(3)** discrimination

based on race and national original and for creating a hostile work environment pursuant to Title

VII, 42 U.S.C. § 1981, CFEPA; **(4)** a claim for intentional infliction of emotional distress; **(5)**

retaliation for protected activities under Connecticut Whistleblower Statute (Conn.Gen.Stat. §§

31-51q et.seq.) for having reported her good faith belief of health and workplace safety issues to

Defendants; and **(6)** for breach of the covenant of good faith and fair dealing.

1

## II.    <u>PROCEDURAL PREREQUISITES</u>

2.      On October 13, 2022, Ms. Marassi filed a dual charge of discrimination against

Defendants Electroformings and Alphacoin with the Boston Area Office of the Equal

Employment Opportunity Commission  (EEOC).

3.      On October 14, 2022, Ms. Marassi filed a complaint with the Connecticut Commission

on Human Rights & Opportunities (CHRO) against all Defendants including Guy Rosato.

4.      On December 2, 2022, Ms. Marassi received a Notice of Right to Sue letter from the

Boston Area Office of the EEOC regarding charge number 523-2023-00135 (See **Exhibit A**).

5.      On December 23, 2022, Ms. Marassi received a notice of a Release of Jurisdiction from

the CHRO regarding complaint numbers 2320116, 2320117 and 2320118 (See **Exhibit B**).

## III.    <u>JURISDICTION AND VENUE</u>

6.      This court, in accordance with § 1331, has jurisdiction over Plaintiff's claims because

this civil action arises under laws of the United States.

7.      This action is authorized and instituted pursuant to the 42 U.S.C. § 2000e et.seq. This

Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has venue over this

action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions

giving rise to the claim occurred in this judicial district.

## IV.    <u>PARTIES</u>

8.      Plaintiff resides in Bethel, Connecticut.

9.      Defendant Electroformings, LLC is a domestic Connecticut limited liability company

with a corporate business address of 11 August Drive, Commerce Park, Danbury, Connecticut

06810. At all times relevant to this Complaint, Defendant conducted business within the

jurisdiction of this Court.

10.     Defendant AlphaCoin, LLC is a privately held Delaware limited liability company, with a corporate business address of 3615 Superior Avenue, Suite 3103F, Cleveland, Ohio 44114. At all times relevant to this Complaint, Defendant conducted business within the jurisdiction of this Court.

11.     Defendant Guy Rosato resides at 107 North Road, New Milford, Connecticut 06776. At all times relevant to this Complaint, Defendant conducted business within the jurisdiction of this Court.

12.     Defendant AlphaCoin LLC owns Electroformings, LLC and they are considered a joint employer. Defendants maintain the same management, ownership, human resources departments, attorneys, operation of the same email system, including but not limited to the hiring and firing of employees, and hold themselves out as one company.

## V.     <u>STATEMENT OF FACTS</u>

13.     The following facts detail an ongoing, continuous, pattern and practice of discrimination. Ms. Marassi was employed by Defendants April 1, 2013 to August 30, 2022, when due to ongoing and continuous employment discrimination and retaliation she was constructively discharged by the Defendants.

<b>ADVERSE ACTION</b>

14.     On August 30, 2022,  Ms. Marassi was constructively discharged from her employment because/substantially because of her sex, perceived sexual orientation, gender, race, national origin and protected activities to complain about the same.  The Defendants engaged in a continuous, concerted, systematic pattern and practice of employment discrimination and retaliation throughout Ms. Marassi's tenure of employment. The adverse employment actions she

experienced spanned many years and were all directly related and connected under the supervision of her managers and the Defendants.

15.    On her last day of work caused by her constructive discharge by Defendants, Ms. Marassi walked from her little office to the Yellow Room where the developer for BAE was located. On her way to the Yellow Room she had to cross the Annex-1 in which a huge SQDIP white board was hung by the company who purchased Electroformings, LLC, Alphacoin.

## ADVERSE ACTIONS

16.    It felt ironic, disrespectful, hurtful, unkind and plainly speaking dishonest that the first letter in the SQDIP acronym and according to AlphaCoin the "most important" S for SAFETY was even posted on a company sign in which Ms. Marassi inhaled:

- sewer gas from a cracked plug on a sewer line in the den (which was a bathroom previous to being a Process Control lab, and the sewer line was from a toilet that used to be in there).
- fumes from various titrations Ms. Marassi had to do as part of her job using concentrated Ammonium Hydroxide which is extremely noxious to the respiratory system, CNS, mucous membranes and eyes, using a malfunctioning/broken fume hood.
- A company in which the Rhodium Sulfate plating bath, which fumes and contains Sulfuric Acid was located and performed in this den/lab of Ms. Marassi's office the Process Control Room which had a broken/malfunctioning fume hood.
- Also fumes from a Blackening process which was done in Ms. Marassi's lab and after many complaints to MGT and nothing done, the employee performing the blackening, he himself moved the process to Peter Pileros lab.
- Peter's lab (a lab with a malfunctioning hood) and a decrepit natural gas burner built in.
- Blackening is a process in which parts are submerged in boiling Ebonol-C an Enthone material and known carcinogen.
- A company in which Jeffrey Perkins made adds of Sodium Dichromate (another known carcinogen and known to cause neprotoxicity due to the chromium reaching the kidneys), to the Dichromate tank, (Jeff was suffering from kidney failure and after he was fired from Defendants had a kidney transplant)
- In 2013 when Ms. Marassi was hired, she made the Sodium Dichromate adds herself.
- A company in which new employees received respirators or gas masks not ever having had their lungs or hearts checked for capacity.

4

- A company that allows their maintenance person Mark Rosato to intimidate employees by throwing tools, cursing all kinds of profanity, yell indistinguishable sounds in the hallway and have tantrums while handling sodium cyanide or concentrated acids.
- S for safety, on a company that allowed their Vice President of Quality to continue to work at GAR and continue to harass employees including sexually, even after dozens came up and complained.

17.    "S" for Safety Evan Richter mentioned, is the number one on the SQDIP list and the most important as Kris Mortimer said, he continued, because no employee is productive if he or she feels his work environment is unsafe. Said the manager who removed Ms. Marassi's door and nobody else's door. Ms. Marassi mentioned that if the company ever had an active shooter, someone perhaps protesting the war and the fact that GAR is a defense company, Ms. Marassi would be the first to be shot as everyone else had a door and the office doors to the plant locked automatically, while she had none.

18.    In March of 2013, Ms. Marassi had a call from Defendants. Guy Rosato Vice President of Quality at that time, called offering her a job. He said that he found her resume online, that her qualifications matched the position available and that he would like her to come in for an interview.

19.    On or about March 13, 2013, Ms. Marassi arrived at the office, she was given an application and filled Quality Engineer for the position desired. She was offered a position of Process Control Chemist. In almost 10 years Ms. Marassi was never given a promotion and never able to become a Quality Engineer for Defendants. She was told after a few weeks to use the title of Process Control Chemist & Regulatory Compliance, on emails, not just Process Control Chemist.

20.    Ms. Marassi reported to Guy Rosato, above Guy Rosato was Russell A. Richter at the time President of Electroformings, LLC and now CTO. Russell's son Evan Richter was covering

for the Chemist position since the previous Chemist Bill Gianetto quit, the one before him Pat Cranney died of tooth cancer (can be caused by Nickel Sulfamate fumes according to the SDS). Tracy Feaser was fired and later sued GAR for sexual harassment. Tracy alleged sexual harassment against Guy Rosato and a lot of male employees including Russell Richter. Guy Rosato told Ms. Marassi that she sued them for sexual harassment and he added, "I thank God she accused Russ too, otherwise I would have been fired, and I met with her at Walmart by accident and she tried to talk to me and I called her a whore". He said in his horrible demeaning tone. Ms. Marassi asked around carefully and other employees, including but not limited to Peter Piliero, confirmed the story.

21.    The 3.5 days were not sufficient to learn everything, and Ms. Marassi's first deception was trying to approach Russell and realizing that he would continue to walk and not stop. She rationalized that he was the President of the company and had many more responsibilities than to clarify any questions she had.

**ADVERSE ACTION**

22.    On or about June 2013, Ms. Marassi decided to ask Guy if she had any questions. She did, and she realized he would copy Russ and continue to walk so she followed him hoping to get a word and heard him telling some guys: "look at her, so cute, following me like a puppy dog!" Ms. Marassi rationalized also: not everyone is professional or know how to joke, just try to learn everything from others and only go to him if no one else knows the answer.

23.    On or about September 2013, Ms. Marassi was intimidated with the Regulatory Compliance being part of her job title. Ms. Marassi has a law degree from Brazil and became preoccupied with the responsibility of the title and function.

24.     On or about January 2014, part of Ms. Marassi's functions as Regulatory Compliance were to report RCRA to the State of CT, report the Safety Meetings if the state required, report Tier-II, and Biennial, create a PPC Plan, give Hazwoper and RCRA Training, document and arrange shipment of the hazardous and non- hazardous waste, Inspect the buildings (3 Plants) for Safety Compliance etc.

25.     Part of Ms. Marassi's responsibilities as a Process Control Chemist were to collect samples of all the existing Nickel Electroforming tanks ~ 22 of them, of Precious Metals tanks 3 of them, the Copper Cyanide 100 gallons tank, and the supporting chemistry tanks. Altogether around 62 tanks.

26.     Ms. Marassi was to collect daily pH and temp of the tanks, analyze the constituents weekly according to Chemical Matrix, create a prescription for adds or bail outs if necessary, which needed to be approved by Russell, and submit the approved prescription to Maintenance which then made the cuts or adds. Also, to review Work Instructions and Titration Methods and AA method, procure and order lab chemicals and process control chemicals etc.

27.     On or about July 2013, as Regulatory Compliance, in 2013 Ms. Marassi had to take a RCRA class at the Hubbard Hall in Waterbury CT. At the class given by Mr. John Paul, she was asked if GAR had a Respiratory Program. Ms. Marassi indicated that they didn't. Mr. John Paul told her that it should be the first thing on her list because it was a RCRA and OSHA requirement, regardless if the company requested the use of respirators. As long as employees use respirators, they need to have a medical professional evaluate them for lung and heart capacity, and after being evaluated then they needed a respirator fit test.

28.     More importantly John Paul said, you need an Industrial Hygienist to find out if you really need respirators because they are tough on skeletal system, and you need to know what the cartridge to use and how long. That is only possible to determine after the air is evaluated.

29.     On August 29, 2013, on the safety monthly report after that class, Ms. Marassi wrote a report containing the need for the Respiratory Program. She received no answer from Defendants.

## ADVERSE ACTION

30.     On or about July 2013, around 3 months after Ms. Marassi was hired, Guy Rosato asked her if she was single. She said that she was. Ms. Marassi had not forgotten the "following me like a puppy-dog " comment, in-fact he repeated the comment many times.

31.     On or about September 2013, Ms. Marassi was weary of him but wanted to give him the benefit of the doubt, that maybe it could be mere curiosity. She was wrong.

## ADVERSE ACTION & PROTEST

32.     On or about January 2014, Guy Rosato asked Ms. Marassi if she would go on a date with one of his friends. She said a very fast "NO", she never dated colleagues or their friends, and she added, "you are not a colleague, you are my boss, so it is not a good idea no," she said.

## ADVERSE ACTION & PROTEST

33.     On or about June 2014, there was a Boeing Auditor George (she does not remember his last name) that Guy tried to hook her up with who was at least 15 years her senior and owned an RV and could take her camping- it was unreal. Ms. Marassi said "no." George from Boeing lived in Bristol, Connecticut and visited GAR frequently and it was uncomfortable to be around the two of them, Guy and George from Boeing.

**ADVERSE ACTIONS & PROTEST**

34.    On or about 2014, Guy Rosato asked Ms. Marassi to go on dates again and again, every

so many months he asked . She then started to sense malice and danger and felt uneasy of having

to say no so many times. At one time Guy Rosato said that the person he wanted her to go on a

date with, was a Brazilian guy like you he said. Ms. Marassi said, "yeah I see, but I'm still not

interested". He then said: "oh I don't blame you, your men like to beat you guys up*".* Ms.

Marassi said, "no they don't, but regardless I am not interested." His statement was

discriminatory and created a hostile work environment based on sex, race and national origin.

35.    On or about December 2014,  there were no changes to the ventilation, no Respiratory

Program, and a manager becoming really angry for no apparent reason other than the H&S items

Ms. Marassi brought up and the dates she refused.

36.    On or about March 2015, Ms. Marassi mentioned Guy Rosato's dating suggestions to

some of her coworkers and they all told her to "be very, very careful, and to avoid him". Avoid

him how, she would ask, he was her manager.

**ADVERSE ACTION & PROTEST**

37.    On or about 2015, again, Guy Rosato approached Ms. Marassi with the dating issues: He

asked her if she would go on a date with his neighbor "who owns a lot of property in Kent CT"

don't you like money?" She said, "no thanks, my daughter opened a business and I am

babysitting and helping on weekends." His statement was discriminatory and created a sexually

hostile work environment.

38.    The more he would ask the ruder Ms. Marassi became, protesting to his sexual advances.

At the same time her coworkers kept saying "be careful, he is a liar, he will taint your image

before Russell and Mr. Ray". He has had many people fired including a genius (employee) who

was inventing a battery backup for the Nickel baths. He gets insecure, they said and felt threatened if an employee had any good ideas that would be beneficial to Defendants.

39.     On or about September 2015, Ms. Marassi was told that this employee when he was fired could not understand why, he knew he was doing an amazing job and asked why would they do that. When Ms. Marassi heard that story, she realized that she had to have impeccable work ethics and keep any ideas that could make the company better to herself, and not leave room for any lies about herself as it would be disproved with the amount of work and quality of data produced by her.

## ADVERSE ACTION/RETALIATION

40.     On or about February 2016, none of Ms. Marassi's "MONTHLY" reports requesting a Respiratory Program and an Air quality test by an Industrial Hygienist were heard.

## ADVERSE ACTION

41.     On or about May 2016, Ms. Marassi decided to explain the need for the Respiratory Program in person, because it wasn't her idea, it was the law, she told Defendants. Guy Rosato then told Ms. Marassi that she had sent too many emails and to stop sending incriminating emails because Russ didn't like such things and that others have been fired for that. Guy Rosato stated to her:

> "There was a woman here, he continued, that didn't know her place. She was a hoe, you can go around and ask anyone, she accused me falsely and thank God she also accused Russ otherwise I would have been fired, she had too many ideas and wanted to boss us around. Needless to say, she is gone and now you are here,  and don't try to become another one like her".

42.     At that, Ms. Marassi was speechless. His statement was discriminatory and created a sexually hostile and retaliatory work environment.  She had and still has her mom who is an elderly lady and lives with her, and financial responsibilities. All Ms. Marassi could bring myself

to say was: "Yes I see but understand please that it has to be done as it is a RCRA requirement, it is not my idea, I didn't create these laws and requirements, and you could be putting lives at risk. What if someone is using a respirator and has asthma, or a heart condition? Someone can have a heart attack as respirators places extra strain on the heart, and the Tank Room reaches over 100 degrees in the summer with humidity respirators are even harder on breathing." After Ms. Marassi said all that, he simply looked at her. He didn't say anything. She had no idea what was in his mind, and then he walked away.

43.     On or about September 2016, nothing was done about H&S but Ms. Marassi thought he sensed that he scared her this time.

## ADVERSE ACTION & RETALIATION

44.     On or about January 2017, the sexual harassment again became an issue. Guy Rosato stood in the doorway to Ms. Marassi's office and began staring up and down at her in an intimidating manner but said nothing to her. He was blocking the doorway and not moving. She said, "excuse me I have to pass this way", then he slowly moved out of the doorway continuously looking up and down her body. Another employee named Renato Soares was with her and witnessed the entire episode. Ms. Marassi complained to Cindy owner of the company. Unfortunately, she was not able to do anything about it, (he is a sexual-predator, Cindy said) but Russell Richter has always protected Guy and felt that Guy's job could not be done by anyone else.

45.     On or about March 2017, Ms. Marassi complained to many colleagues, including but not limited to: Renato Soares, Debbie Delaventura - Secretary, Diana Peck, Josh Luckwsky, Peter Pilero, Denise Fredericks - Quality Supervisor, Charleton Cole - QC Technician, and coworkers

and again everyone said to be careful that Guy Rosato was a dangerous person and had many people fired for no reason. To be very careful but patient because he should be retiring soon.

## ADVERSE ACTION & PROTEST

46.    On or about January 2017, Guy Rosato asked Ms. Marassi in front of Russ, "[a]re you easy like the rest of them?" He always asked those questions with a psychotic smile. She replied: the rest of them who? He said, "the rest of them Brazilian girls like you." She said: "you should know by now that I am not". At this point Russell said: "hey stop you two." Ms. Marassi complained to Cindy and she was mortified but again, powerless.  Guy Rosato continued to act in a discriminatory manner and created a hostile work environment on account of gender, sex, race and national origin.

47.    On or about April 2013, the then alive Mr. Ray and owner of GAR had asked Ms. Marassi to do her citizenship in no later than 6 months in order to continue to work at GAR, she did in November 2013. Once she became a citizen Mr. Ray (Cindy and Todd's dad) bought a cake and had a very nice gathering to celebrate her achievement at the cafeteria. Guy Rosato came and asked if upon becoming a citizen she had affiliated with any political party. She didn't know that she didn't need to answer that question, so she said "yes I did". He then said (he loved using that expression) "let me guess: Democrat?" She said oh no, her grandfather was a farmer, her dad before becoming an attorney was an Army Captain, they were Army brats, she affiliated with the Republican party as is with her whole family here and back home.

## ADVERSE ACTION

48.    Ms. Marassi believed Guy Rosato could never accept her political party. He always said things like: "I bet you are happy she won right?" She who, she would ask. He said, "AOC...you like them, you guys love them … AOC, Tlaib, the Pocahontas etc..." He said the same thing in

2021 when AOC (Alexandria Ocasio-Cortez) was re-elected. The fact that Ms. Marassi was not a Democrat was something he could never accept or believe or tolerate.

## ADVERSE ACTION

49.     On or about December 2021, in regards to AOC second victory Guy Rosato said: "you have to be happy, you guys have a bunch of kids, you love those programs and all the help you can get". He said that in front of his audience in the Engineering Room, it should not matter where he said it, but it is more embarrassing to hear certain racial things in front of others, and he continued, "Let me guess how many kids you have: more than 3 I bet". Ms. Marassi walked away.  This was now years after she was hired. This was now after Ms. Marassi had already reported him for sexual harassment and still… At this point everyone knew she has only one child, but like she said before, his idea of her was not real, it was a creation in his mind in total disparity of the real Ms. Marassi, the person who she was.  He decided who she was, what she wanted, how good she was at her job, and what she believed in, and Ms. Marassi is sure he influenced a few others to believe whatever he believed she was. Ms. Marassi didn't feel that explaining who she was or what she stood for made or would make any difference anymore then, now or ever.

50.     On or about November 2018, Ms. Marassi was called into Russ' office. Guy and Russ asked her to sit down and if she could tell them what was the best thing she knew that could be used for analysis in the lab: she was surprised and very happy to be asked and said that the best instrument would be an ICP because it had simultaneous lines and it can analyze 70 + elements in 5 minutes, it could do the waste and can also determine if they are indeed hazardous and can awe Defendants customers.

51.    Ms. Marassi was interrupted by Guy Rosato. He asked: "what would be the best thing next to it." At that point she said nothing anymore, so he said: "the next best thing is our new hire Elke Kotour, she helped us to set up our developer system years ago when she worked for McDermid, she is a pro at electroforming, she has a Doctorate degree, she is smart as whip, she is nice to talk to and she was desperately calling needing a job. She starts Monday, you are not going to be her boss, you are to help her with whatever she may need including any training if she needs, we are looking for a place to sit her, so we thought you'd like the good news. Create a list of all you do and we may split your tasks with her, that will give you a chance to migrate into Quality Engineering as you liked to, before.*"

### ADVERSE ACTION & PROTEST

52.    On or about March 2018, Guy Rosato walked by Ms. Marassi as she tried to punch out for lunch on the hallway computer. Behind her was a small line of men formed to punch out as well. **He was carrying a stepladder in his hand and bumped Ms. Marassi' backside with the metal ladder and rubbed it against it as he walked.** She was pinned between him and the computer on the wall, she tried to turn around and saw his face on one of those round industrial mirrors and he was blinking one eye to the guys and jeering. When she freed herself, she turned around went to her office and closed the door and emailed Russ. Russ replied immediately asking her if Guy Rosato was joking. She informed Russ that Guy and she didn't joke, that she had never given him the freedom to joke with her like that. Russ then asked if it was accidental, she said no, she saw him blinking and jeering, he never said oh sorry or anything...so, no it wasn't an accident.

## ADVERSE ACTION, RETALIATION & PROTEST

53.     On or about March 2018, the same afternoon, Guy Rosato came to her office uninvited, closed the door behind him and told her, "how dare you report me to Russ, how dare you", he repeated. She told him that she was going to report him again if he didn't leave. Before he left, he said, "I am going to put the fear of God in you". This was one of the more offensive things he ever said to her. Ms. Marasi didn't need someone like him putting the fear of God in her. As soon as he left, she emailed Russ again and reported that he came to her office and closed the door and was infuriated.

## ADVERSE ACTION

54.     On or about December 2018, the day before Christmas break, Guy Rosato grabbed Ms. Marassi by the hip, as she was in the hallway to her office, and pulled her towards him to give her a Christmas gift, a tree ornament. He gave her a weird "sideways hug". The hug was really forceful, too hard and too strong, not merry and friendly as the occasion calls for. It was more like a lover trying to have rough sex with a partner. It was completely inappropriate and unwelcomed.

55.     On or about December 2018, Ms. Marassi suspected that because they had Elke now, they were trying to make her leave. Elke had no desk, no place to be and refused to work from Peter's lab.

56.     On or about November 2018, Ms. Marassi created the list of all her tasks that Russ and Guy asked. Elke never did any of them except the pH and temps. Nobody had a meeting with Ms. Marassi and Elke to split tasks or anything like that. Ms. Marassi believed Elke didn't last even a year. She was fired, Ms. Marassi was told by Evan Richter, she was fired because she was trying to unionize the company.

**ADVERSE ACTION**

57.     On or about March 2019, one day while Elke was still at the company in 2019, Ms. Marassi was walking to the Tank Room and found Guy Rosato in there with a thermometer. He was standing on the grid, checking the temperature of one of the Nickel tanks. The grid is ~2 ft above the normal cement floor. He looked at her and said with a lascivious expression and stated, "open your mouth." He made that statement directly to her as she was about to step on the first of two steps to the Tank Room Grid. It was clearly an innuendo because of being 2 ft higher than the level in which she was standing made her face at the height of his private parts, and he was holding the thermometer wand in front of his crotch, as if it was a penis. She walked away, disgusted and decided he did not deserve any comments.

58.     On or about July 2019, Guy Rosato must have sensed Ms. Marassi's worries about her family,  because he became more brazen and crueler as he began to create confrontations in front of other employees and managers designed to deprecate her knowledge and experience.  He started to have Debbie or Natalie or Christy Burkman page her to go to the conference room of the Plant-1.  Once in the conference room, he started asking her questions about the analysis of the nickel tanks and about the reports and the new AH64 tank. He would follow every question immediately with another question and raise his tone of voice, never providing Ms. Marassi time to answer the first question. He would then go on to immediately ask another question and another question, in an interrogatory style - ten questions at a time, with his personal comments stated in between.  At the end of the confrontations, he would turn to the employees present, either Evan Richter, Russell Richter, Debbie Delaventura, Natalie Scott, or Stephen Rubino and still not allow any time for Ms. Marassi to answer his far too numerous questions.  He would then say, "See!? She clearly doesn't know any of the answers. She is trying to think, she doesn't

know the answers, none of them, she couldn't answer any of them!" He continued doing this way into December of 2021. During the same time period, he started to walk by Ms. Marassi' office door "moaning" in a sexually provocative way.  At one time he stopped and leaned against the wall moaning with his hand placed on top of his pant fly.  The men's room was next to her office door.  At that point Ms. Marassi slammed the door closed. A little while later (a few minutes) he came and said loudly, "this is an open door policy business."  Ms. Marassi never had her door closed except during lunch which was a half hour.

59.     On or about February 2020, Ms. Marassi believed he sensed her stress. She believed that fear and stress are things that people like Guy Rosato feed on. They are pros at recognizing the signs of someone who doesn't want to fight, doesn't want any issues. She became even more withdrawn, she wanted to share some of her concerns with her friends at work because she didn't want her mother and her daughter to feel heavy on her, but was afraid he would find out and believe she was an easier prey, because now more than ever Ms. Marassi needed her job.

60.     Ms. Marassi didn't share anything about her personal life, with anyone at the company but Denise Fredericks. She shared it with her because she was another one of Guy Rosato's victims. Denise Fredericks suffered two cancers while working at the company. Ms. Marassi blamed the poor environment and Guy Rosato. She believed adrenaline caused by stress fuels cancer cells in people who are prone. Ms. Marassi remembered Guy Rosato asking Denise during a companywide training if she knew the company Quality Statement. Ms. Marassi couldn't hear her answer, but she heard Guy Rosato state, "well, our Quality Supervisor has no idea of the Quality Statement, imagine that!"

61.     Ms. Marassi felt empathy for Denise, but envied her because she was married. Denise was inflicted rudeness and meanness only. To Ms. Marassi it was that plus the sexual innuendos,

the comments about her race, her emails in English, copied to everyone on the email distribution list, Guy Rosato's ideas of her political views and how freely he shared his image of her to other colleagues.

## ADVERSE ACTION

62.     On or about March 2020, during quarantine Guy Rosato became more brazen when he sensed that Ms. Marassi became more polite towards him. He mentioned to Sandy Fouler Boeing Auditor that Ms. Marassi was incompetent as she walked out of the Engineering room. He said it loud so she could hear him, but she pretended she didn't.

## PROTEST

63.     On or about November 2021, Ms. Marassi complained to Cindy about the staring and the walking around humming/moaning. Cindy believed her and instructed her to take advantage of the new company having an HR department and report everything to the Alphacoin new manager Kris Mortimer.

64.     On or about June 2021, Ms. Marassi was weighing out to report or not to Alphacoin when Guy Rosato saw her coming out of one of the labs and asked her to approach him for a minute. He said that he wanted to show her something. She didn't approach him as he asked, but stopped walking, he approached her instead and then said to look at a picture. On his phone there was an image of an older gentleman. Ms. Marassi said, "oh". He then said, "it's my uncle he is 90, he is looking for a Brazilian girlfriend," with the same lewd expression. Ms. Marassi walked to her lab and reported the incident to Cindy.

65.     Ms. Marassi came home that night and called a local attorney. She then came back to work the following week and called HR and told Geralyn Macchio that she had contacted an attorney and that the situation needed to change. Geralyn then distributed Complaint forms. Ms.

Marassi wrote a complaint stating detail after detail of the things she remembered that Guy had done to her. This form asked what was the outcome desired and she wrote "Guy to be fired". After that form was submitted, HR came into our Plant and interviewed almost all the employees.

66.     Ms. Marassi remembers the following employees were interviewed by HR: Renato Soares, Diana Peck, Peter Pillero, Josh Luckwsky, Erika Kilmer, Mann Dingh, Hun, Scott Brown, Denise Fredericks, and David Pomeroy. These employees told HR that Guy Rosato harassed employees, diminished and humiliated them in front of Auditors and contractors from other companies and Consultants and that in her case the harassment was sexual, including lewd comments, stares, demeaning comments and jokes.

67.     One of the employees Joshua Lucksky said that Guy Rosato constantly harassed others, especially those that wanted to run things by the book, and totally disobeyed ignored BAE and Boeing requirements and procedures and that Guy Rosato constantly lied to Auditors such as Sandy Fouler (surprisingly Guy's personal friend and Boeing Auditor). Mann Dingh came to Ms. Marassi and apologized telling her that yes he had seen Guy Rosato shout at Ms. Marassi before but didn't tell anything to HR because he was afraid of losing his job.

68.     Another coworker Scott Brown said to HR that on his first week Guy Rosato asked him if he knew why black people didn't like using chainsaws. Scott said, "no, I don't won't you enlighten me?"  Guy then said: "because it goes nigganigganigga when it takes off!" Diana Peck the first employee hired by Mr. Ray confirmed the harassment towards all and that to Ms. Marassi the harassment was sexual. Denise Fredericks said that he would not let her progress in her career and never allowed her to learn other techniques or instruments and that he hated women in general. Cindy Palombo had to leave the conference room in tears because it was

painful, she said to hear all that and be so powerless.  Guy Rosado's proclivity to hold and

exhibit a racial bias against Black employees buttresses his discriminatory animus to Ms.

Marassi based on her sex, perceived sexual orientation, race, national origin and protected

complaints to management about the same.

69.    Guy Rosato was instructed to leave the offices and was seen outside in the parking lot

pacing. Ms. Marassi was worried because once he told her that he had guns in his car and that

one time he had to drive like a maniac to avoid a police car. Ms. Marassi never understood if he

didn't have a gun permit or what caused him to be afraid of the police.

70.    On June 21, 2021, Todd Ray, former Director of Operations, sent me an email stating the

following:

> In regards to Guy Rosato and his treatment of others including Julia Marassi here  is my
> statement. Guy has often made people feel that they are incapable of doing their jobs
> even though they have degrees in that field. I know that he has made comments of what
> are you stupid and we're you absent that day. My thoughts are he has no respect for
> woman. In one instance I remember him getting down on one knee in Julia's lab doorway
> and practically proposing to her. I know he would make comments about her that she
> didn't know what she was doing but then be all nice to her when he needed some
> information. One of Guys lines when he would meet a female, whether it be a customer,
> vendor or a new hire was; Hi my name is Guy Rosato how do you like me so far? I told
> him a few times that, that was inappropriate. Guy can be very manipulative and can make
> upper management believe that someone is not doing their job and that person would
> either get reprimanded or fired. Far less from what he has done to other people. I dealt
> with his bullying for many years (31) even being part owner. He has no respect for me or
> others. Once he was promoted to director of operations (pretty much my title) I knew it
> was time for me to leave. I was not going to stay around any longer and take the mental
> abuse I had endured for so many years. I could go on and on. I know he's made other
> people cry because of the way he treats people. It was brought to others attention that a
> lot of this was going on but nothing was done.

## ADVERSE ACTION

71.    On or about August 2021, Guy Rosato knew that Ms. Marassi was not replying to almost

any of his comments and provocations, he then came to her office one day and said: "Oh I know

why you won't date anyone." Ms. Marassi said, "I do date, but it is not a good time for me to date, I have too much going on." He ignored what she said and continued, "NO, that is not why...You don't date and I know why not." Ms. Marassi said, "ok, and why is that then Guy?" He said straight away *"because you are a homosexual you like the same things I like."* These statements against interest represent direct evidence of a perceived sexual orientation discrimination by Guy Rosato and created a sexually hostile work environment. These statements were also retaliatory.

72.    Ms. Marassi finally had a realization that he placed on her all of the things that he hated, Latinos, homosexuals, people that depend on social services, mothers with children (maybe because he doesn't have any kids). He considered those and perhaps some other groups of people beneath him, no good, undeserving of any merit and so he desperately tried to fit her into any of those groups.

## ADVERSE ACTION

73.    On or about August 2021, and throughout the year, Guy Rosato started stopping by Ms. Marassi' door and just stood there without saying anything. This activity would stress out Ms. Marassi and she would say, "what" to Guy Rosato. The length of time that he would stare became longer and Ms.Marssi reported the incidents to HR.

74.    On or about November 2021, two new Engineers were hired, Siddharth Sheekar (Sid) and Gabriel Libanio. Sid saw most of the humiliations Ms. Marassi endured, but at this point it was clear that Guy Rosato hated her and if you wanted to progress or remain at the company as a new employee, you had to avoid or hate Ms. Marassi in the eyes of Guy Rosato and the company.

75.     On or about November 2021, with regard to the Industrial Hygienist to check the quality of the air and a Respiratory Program, nothing was done, about the ventilation nothing was done, about the Spirometry test nothing was done, but Guy Rosato constantly brought up and scrutinized Ms. Marassi' sexual preferences or the lack of them. That was apparently more important than the fumes being inhaled by employees.

## ADVERSE ACTION, RETALIATION & PROTEST

76.     On or about December 2021, (a BAE Auditor Dr Dion stopped by Ms. Marassi' lab and told her early in the morning that he had bought donuts for everyone. Guy Rosato walked by and saw us talking and told Dr. Dion, "be very careful she is the type that will do anything to complain that someone is sexually harassing her." Ms. Marassi had to reply to that one, and she said that yes she did report him and that she had done it a few times and that she would do it again and even today because he was discriminatory, indecent, immoral and a liar. Ms. Marassi felt that she had to say something, because Guy Rosato was anticipating she would keep quiet as she did most of the times she was provoked like this. He was shocked at her sudden reaction and before she could say something else, Guy Rosato started shouting loudly at her to shut her mouth, several times. Dr. Dion was horrified and told Guy Rosato to go away. Some other employees came out of their working areas in response to Guy Rostao's shouting. Dr. Dion asked Ms. Marassi what was going on and tried several times to obtain more information as she said that what was going on had been already reported and that management had talked to him and that it was all said and done, and not to worry because he was already reported. Ms. Marassi was extremely embarrassed and told Cindy and Russ of the incident.

## ADVERSE ACTION & RETALIATION

77.     On or about December 2021, not long after that Guy, John Barna Evan Richter, Gabe

Libanio and some people from P-2 and P-3 were discussing procedures and Ms. Marassi was

invited into the discussion. She joined in and said that they needed to have better procedures, but

better than that, they needed to follow the procedures that they already had. That infuriated Guy

Rosato, he said yelling, "HOW many times I need to say that YOU ARE NO LONGER working

for Honeywell or in pharma making aspirins.  Those are parts- parts do you

understand? You don't eat parts- you are not making ASPIRINS″

## PROTEST

78.     During this same conversation above, Ms. Marassi said, "well, then you have a double

standard. Sometimes when you want to you say that hundreds of people can die and the FAA

will arrest you if those are not done whichever way you want, then again you also say what you

just said. You have to decide Guy if you are serious before AS9100 or if it doesn't matter

because those are simply helicopter parts and not Aspirins. How many times have I asked for the

replies to my emails about REACH and ROHS, the customers are demanding replies, I need to

have the parts or at least one tested for ROHS and you ignore it and say, '*simply say we don't

have any issues with those metals,'* but without analysis."

## ADVERSE ACTION

79.     At this point Ms. Marassi thought that Guy Rosato was going to hit her because he came

towards her and stood one inch away from her face and started yelling, "how dare you- how dare

you dare say or raise any doubts against my morals, my name". None of the guys standing in the

discussion interrupted him. At this point the relationship was almost unbearable. As he left, Ms.

Marassi said that she was going to report him again but did not have to as management witnessed

the event.  John Barna was the production manager, Evan Richter was the engineering manager, Stephen Rubino was the consultant, Gabe Libanio was the Quality Engineer and they were all there standing in the hallway with Guy and Ms. Marassi.  They all heard and saw everything and did nothing to stop him.

80.     On or about the beginning of December 2021, there was no Organizational chart placed anywhere, as HR had promised they would do. Ms. Marassi knew that HR had collected a lot of information from the employees from all of the Plants. Ms. Marassi felt that enough time had passed and that she and other employees deserved an outcome of what had HR decided to do with Guy Rosato.

81.     On or about December of 2021, after Ms. Marassi called Geralyn, HR told her they were going to "monitor" Guy Rosato. He was not going to be fired as Ms. Marassi had asked on the grievance complaint form.

## ADVERSE ACTION

82.     Actually, HR told all employees that from now on there would be no more emails or calls complaining about Guy Rosato. The procedure to complaint about him or anyone else was to file a complaint form, have  Russ sign it and then submit it to HR. Ms. Marassi believed this was intimidating and intended to stop further complaints by employees about Guy Rosato. To interrupt the President of a company to have him or she sign complaint forms against the Vice President he feels is indispensable. This action was retaliatory against Ms. Marassi for filing so many complaints against Guy Rosato because he would not stop and the company would not stop him, discipline nor fire him.

**ADVERSE ACTION**

83.    On or about December 2021, Ms. Marassi was also told by HR that she would be

working for Evan Richter going forward. Guy Rosato continued his discriminatory provocations,

the staring and the humming/moaning while strutting in the corridor in front of Ms. Marassi's

office.

**ADVERSE ACTION**

84.    On or about December 2021, during Ms. Marassi' first week working for Evan he asked

her if she had been to Terrywhile Park in Danbury that weekend. She said no, because

she doesn't really like hiking. He said, "I expected to see you there, they had a Gay Pride Event."

Ms. Marassi had that familiar sad feeling…"It's over! What am I to do now? Report yet, another

Manager?" This was a hostile statement and discriminatory to perceive Ms. Marassi as being

gay, which she is not.

**ADVERSE ACTION & PROTEST**

85.    On or about December 2021, Ms. Marassi sent Evan an email telling him not joke about

any gay issues, and that she had reported Guy Rosato for that, and would have to report him too.

Evan, reported Ms. Marassi to HR. She received a call from Geralyn who was very angry at Ms.

Marassi for discussing Guy Rosato's previous gay comments towards her to Evan. Geralyn said

those issues were confidential and that Ms. Marassi was not allowed to talk about them. Later on

Evan apologized for getting Ms. Marassi "in trouble with HR", he said that he didn't contact HR,

that his dad Russ was the one that reported her.

**ADVERSE ACTION**

86.    On December 23, 2021, Ms. Marassi took a weeklong vacation.  She couldn't come back

to work at the end of her vacation because she caught Covid and had to quarantine for a week.

While she was home recuperating, a coworker sent her a text telling her she wanted to give Ms. Marassi the heads up that the door to her office was removed.

## ADVERSE ACTION

87.     Still in January of 2022, when Ms. Marassi came back from Covid she was told that they needed daily stand up meetings, as requested by Kris Mortimer. The Engineering group where she belonged and presided by Evan Richter had four members: Ms. Marassi, Sid , Bill and Harry. Ms. Marassi was still a little weak from Covid and decided to sit down for a few of the meetings. The next time she pulled a chair to sit down, she was told by Evan that she was not to sit down because she left a cloud of dead skin the last time she had sat there. Ms. Marassi was embarrassed, angry, still feeling sick and now certain nothing had changed at all. She didn't say anything to Evan, but when she was back at her office, she emailed Sid and asked him if she had heard correctly what Evan said: "**you left a cloud of dead skin around you the last time you sat on that chair**" and Sid replied, "you heard correct, that's what he said."

## ADVERSE ACTION

88.     On or about January 2022, Ms. Marassi found her exhaust hood was not working at all and not sucking any air. It would turn on and make the regular noise exhausts make and you would think it was working but upon testing with smoke Ms. Marassi saw that it was not sucking in any of the smoke, and not even moving the air around at least.

89.     On or about February 2022, Ms. Marassi became sick again and doctor could not control her asthma and gave her Montelukast on top of the inhaler she was using. She continued to work with this health condition in a ventless office environment and the company never did anything about it.

## ADVERSE ACTION

90.    On or about February 2022, Evan then started asking Ms. Marassi to do larger cuts on the nickel baths or acid baths historically done by maintenance person Mark Rosato, Guy Rosato's brother. Ms. Marassi indicated that she was not going to do Maintenance's job, Evan replied: "you will do what I tell you to do." Again, he apologized days later. He also apologized for having removed her door, that he had Mark Rosato do it because he "allegedly" tripped on her door, but there is no prior evidence of this occurring. Ms. Marassi told him that she never tripped on her own door and wanted it back. She told him that at lunch time she closed the door when she had it so she would be able to make personal phone calls and have some privacy. He said, "no, I won't place the door back here. I like it without a door." All other employees had doors to their offices.

## PROTEST

91.    In February of 2022, Kris Mortimer mentioned to Ms. Marassi that she was always sick. Ms. Marassi pulled him in the lab and showed him how her hood did not work and mentioned that she had complained many times. And Ms. Marassi kept complaining to Mike Casey (Mark Rosato's then supervisor).

92.    On or about March 2022, Mike Casey brought in an HVAC company to Ms. Marassi's ventilation in the Plant and the person checking on her lab/den said that the area was like a gas chamber in her lab, and how all of the employees were inhaling whatever was in the air (nickel sulfamate, acids, copper, dichromate and cyanide fumes etc.) because the ventilation not only was antiquated but **dismantled in several areas** and there was no air intake.

**PROTEST**

93.    On or about March 2022, Ms. Marassi met again with Kris Mortimer and complained that the hood was still not fixed and also about Guy Rosato strutting around from the men's room and making sexual moaning noises, and her door was still not replaced. Kris Mortimer told Ms. Marassi that she was imagining things and that it was not healthy to feel that way, that Guy Rosato was purposely strutting and sexually moaning in her corridor, that someone had sabotaged her hood. Ms. Marassi pointed to the missing door and asked Kris Mortimer if he could see one, or if she was the only one imagining that it was not there. She pointed to the exhaust hood that seemed like it was working (made noise) turned on and off but not sucked any fumes and asked him if she was imagining that and if he wanted her to do the smoke test to show him. Ms. Marassi also pointed out that Guy Rosato was smart enough to do things such as sounds, expressions that are lewd but also difficult to prove. And Ms. Marassi asked him how does a fume hood tubing gets disconnected. Do they have spirits here, do they need an exorcist in this building, did they have an earthquake that only broke Ms. Marassi' hood. Kris didn't like that.

94.    On or about April 2022, the Defendants had a layoff and two of the employees that talked more vehemently against Guy Rosato, Josh Luckwsky and Ethan Beato, were let go. Mike Casey, Mark Rosato's supervisor was laid off too. Mike spoke openly on Safety Meetings about the fact that the ventilation was antiquated and how the HVAC company had told him it would cost hundreds of thousands of dollars to correct the ventilation and tie it with the broken fume hood in Ms. Marassi' lab which also supposed to remove the acetylene fumes from the Atomic Absorber instrument she used to analyze Cobalt on the Nickel Cobalt baths. Mike Casey kept

repeating that the two HVAC companies that came in to give quotes said that it was a really big job and not an easy fix.

95.     On or about May 2022, the company had a meeting at the cafeteria and it was announced the company had turned around. A good quarter was expected and that a new position was created Director of Safety, and that position would be filled by Michelle Gill, a longtime friend of Mark Rosato. Michelle had a technical college degree in horse studies. She took some of Ms. Marassi' responsibilities and her coworkers questioned why wasn't that new position given to Ms. Marassi.

96.     On or about June 2022, a very strange and noxious odor started to be present in the lab. Ms. Marassi suspected a dead creature may have hidden behind the 5 gal jugs of chemicals. Some of Ms. Marassi's coworkers smelled it too and told her that if it was a mouse it could be a matter of weeks and then it would disappear. She turned a regular fan on to help dissipate it, since the exhaust didn't work. The smell didn't get better.

97.     On or about July 2022, Ms. Marassi's gas alarm went off. She called John Barna, because Russ was off and Evan wasn't responding, but she reset the alarm and didn't go off again. The smell was so intense that Renato came in and felt dizzy. Ms. Marassi asked Peter for help and they decided to move all the jugs around looking for the dead animal. Nothing was found. That's when Peter suggested maybe it is the sewer, as Ms. Marassi's lab used to be a ladies' bathroom and under this plank of wood was the toilet. The plank of wood was just a loose ~ 2.5 x 2.5 square made of wood. They lifted that up and there was the toilet pipe with a cracked seal. Ms. Marassi applied Triton X to the seal and bubbles of sewer gas of approximately 1ft long by maybe 2 inches wide formed. This was found Friday, but the seal was not fixed until Monday.

Ms. Marassi and other employees had inhaled sewer gas for weeks perhaps months even, and then Ms. Marassi was being told "you are always sick", well no wonder.

98.　　On or about August 2022, Ms. Marassi heard that Denise went home crying and that Guy Rosato had said some things that had upset her to the point she walked out. Through the grapevine the story was that HR contacted her and convinced her to comeback and eventually that Guy Rosato was being "groomed to be a better manager".

**PROTEST**

99.　　On or about August 2022, maintenance was infuriated at Ms. Marassi because she was refusing to do Mark's job, because she complained weekly about her broken hood, because she emailed reporting a broken air compressor.  That air compressor sat on the Annex-1 and was used by Ms. Marassi to run the Atomic Absorber. The employee stationed on Annex-1 came to her and said that the air compressor was making extra loud sounds and that a metal piece had popped. His name was Richard Fazio and he said he spoke with Mark Rosato from Maintenance and Mark said that it wasn't Mark's problem. Ms. Marassi went to the Annex-1 unplugged the air compressor and quickly walked out of the area. She then sent an email complaining that she had to fix air compressors too?

100.　　On or about August 2022, Ms. Marassi organized the Hazardous Waste Hauling from the company by Veolia. This was done weekly. She added Mark Rosato to the emails warning of the pickup dates and times (historically weekly every Wednesday). Mark would get angry at having to bring the drums of waste to the shipping area. Twice he shoved drums of hazardous waste almost making the drum fall down the loading dock onto the floor below.

101.　　On or about July 2022, the last time Mark Rosato had one of his fits involved a drum of Copper Cyanide. He was angry because the Veolia had arrived and he had to interrupt a job he

was doing to bring the 55 gallon drum to the loading dock. He again shoved the drum and again it not only almost tipped over, but Mark himself turned around and almost hit a helicopter blade that was on a cart nearby.

**PROTEST**

102.    On or about July 2022, Ms. Marassi emailed Russ to report Mark Rosato and copied Kris. The result of the email was that she needed to place a white board in the shipping area indicating when the drums were to be picked up, including dates and times. The email was not sufficient. Ms. Marassi bought the white board and wrote the pickups as Russ and Kris told her to do. She was never reimbursed for the purchase of the whiteboard.

**ADVERSE ACTION & PROTEST**

103.    On or about July 2022, Ms. Marassi was also to take her vacation on July 23, 2022, during the week of her vacation Mark Rosato was very upset over the email she wrote reporting him. Ms. Marassi was walking to the shipping area from her lab. She didn't realize Mark Rosato was approaching from behind her. As she passed a large metal industrial door 4 to 5 steps passed the door that has a self-closing spring on it, she heard a huge noise. And a muffled "F-word." It was Mark Rosato. He was coming behind her and either kicked the door or hit it open with what she believed was a mandrel he was holding. The door flew into the wall and back at him so again another noise. She stopped walking and said, "excuse me??" He just kept walking really slowly. Ms. Marassi turned back and went to her office and emailed Kris, Russ and Evan. She told them this was too much and she did not feel safe in her work environment and needed help, something had to change. The email was clearly forwarded to Geralyn because she was the only one that replied asking "IF" Ms. Marassi wanted a follow up. Ms. Marassi replied saying that she would

appreciate a follow up and if they could meet that same week because on the following week Ms. Marassi was going away on vacation from July 23rd to August 2nd.

## PROTEST

104.    On or about August 2022, Geralyn, Ms. Marassi and Cindy met on August 17th. It wasn't pleasant. Ms. Marassi sat in the conference room and Geralyn showed a presentation about what constitutes violence in the workplace. Shoving drums of cyanide or any other drums, cursing profanities and "opening doors" hard didn't make the list. Ms. Marassi told her the door wasn't opened, it was kicked open. She told Ms. Marassi that she couldn't tell that because Ms. Marassi was walking ahead of him. Ms. Marassi told her that kicking or hitting the door were the only two possibilities to explain the loud banging noise. She said that still Ms. Marassi couldn't tell and still were not on the list. Ms. Marassi asked her how was it possible that these two brothers could curse, throw tools and tantrums, sexually harass people, or simply harass people and still remain employed. Ms. Marassi asked her if they were their therapy session, the pasture in which they feed on and eventually would feel full and better, and also if Ms. Marassi started to act the same way, if the same grace given to them would be offered to her. She replied again; if it isn't on the list it doesn't make for violence in the workplace. Ms. Marassi then asked her if that was normal behavior. She replied to Ms. Marassi's question with a semi-question, "define normal". At that moment, Ms. Marassi realized that the company was corrupt. There was nothing left to do or say. She started grabbing her purse and said she needed to do something after work and had to leave.

## ADVERSE ACTION

105.    On August 19, 2022, Ms. Marassi was called into the Plant-1 conference room and told by Evan that her overtime (~10 hours a week) were cancelled. Ms. Marassi told him that it would

be hard if not impossible to perform all of her tasks and reports in 40 hours. He said nonchalantly "Just do what you can...″

106.    On or about August 22, 2022, Ms. Marassi came to work and found her lab with puddles of water on the floor leaking from the men's room toilet, as she was told by a coworker. The men's room was next to her office. Either the toilet was getting backed up or one of the urinals.

107.    On or about August 2022, Ms. Marassi removed the jugs of chemicals that were on the floor and with the help of Peter and Diana brought everything to be washed with the anti-fatigue mat and washed them on the Tank Room floor. Two days later the bathroom leaked again. Ms. Marassi sent an email to Russ, and he replied that she had to email Mark Rosato.  Mark came in using a shop vacuum and dried the water. No word if the plumbing on the men's room was fixed. Again, Ms. Marassi brought everything to the Tank room to wash and try to sanitize it.

108.    On or about August 2022, during the next Safety Committee meeting (the last one being in August of 22) Ms. Marassi pointed out to Michelle and the other members one last time, all the things the company needed. Ms. Marassi pointed out the fact that they only had a Respirator fitting but no lung tests performed on employees. She pointed out that Michelle had ordered the worst eyewashes which risk bacteria growth and the very product the algaecide to stop algae and bacteria to grow in the water can be dangerous on the eyes. Ms. Marassi pointed out that the bottles they had for eyewash are almost impossible to open especially if your eyes had been splashed and are hurting. Ms. Marassi pointed out before, a thousand times that there is a specific flow and temperature required by OSHA, that what they had was not ideal. Ms. Marassi later sent her an email with an article about how Boric acid is a hormone disruptor. Ms. Marassi never understood things done cheaply when it comes to the health of people under your supervision.

109.    Ms. Marassi did not believe Michelle had the qualifications for the job. Ms. Marassi tried

pointing out that the health and wellbeing of employees could become her responsibility due to

her title and if she was given a budget to use it buying the best in the market and after a search,

but never the cheapest.

110.    On or about August 2022, Ms. Marassi looked for a psychologist to help her navigate the

toxic workplace. She could not wrap her mind around the "whys" that constantly popped in her

mind. Why did they allow this? Why didn't they fire Guy Rosato? Why would they keep such a

liability? Why would the one time owner Cindy Palombo call Guy Rosato a sexual predator and

but the company never fired him? Why was Ms. Marassi  afraid of leaving the God forsaken

place? Why did Ms. Marassi feel responsible for the wellbeing of the ones that will remain there

when she left?

111.    On August 29, 2022, Ms. Marassi met with a therapist to deal with her emotional distress

caused by the Defendants. She continue to be treated for emotional distress.

112.    On August 30, 2022,  Ms. Marassi received a text message exchange with John Barna,

Production Manager, stating, "you're not quitting." Ms. Marassi responded, "I am. I had enough

John." John responded, "Guy's going to be moving on, you have to trust me. I understand it's

been terrible with him there. I'm taking more control of things and I can help with Mark." Ms.

Marassi responded, "I don't want to work at GAR. I am not being protected. Mark is being

violent. I told my dad everything he is horrible. He made me promise I wouldn't walk in

anymore. I made that promise because I know he is right. I am spent and done." John responded,

"you have to trust me and let me help you. I promise you I will protect you."  Ms. Marassi

replied, "No John I am done. There is no safe place there. I'm a female." John responded,

"Russell is moving on and he was the one empowering Guy." Ms. Marassi replied, "I'm not

having that Guy kick doors behind me cursing F bomb after F bomb." John replied, "I fought it out today with both of them." Ms Marassi replied, "I'm done John." John responded, "I promise you I will be in it with you. Give me a chance. Please!" Ms.Marassi replied, "No John I love you guys I really do, but I just can't." John said, "Please sleep on it and try to envision a Gar life without Guy and Russ." Ms. Marassi said, "It was over nine years ago begging for help. I am finally feeling the stress of the abuse I suffered on this 9 years." John replied, "It's closer than you think. I understand your frustration. If we can fix it we'll go with you." Ms. Marassi said, "please try to understand". John said, "I do understand. That's the problem. I'm asking you to trust me to fix it. I heard Alex say time today they're counting on me to run that place. I don't want my first order of business loosing you!!"

113.    On September 29, 2022, Ms. Marassi received a text message from Cindy Palomba, "Ok I will email you- then we can meet- not a problem. The truth will prevail. Guy knows exactly what he did. He created an extremely hostile and toxic work environment for many employees including yourself and he sexually harassed you and thought he could get away with it."

**ADVERSE ACTION**

114.    On or about August of 2022, on Ms. Marassi's last day at the company she walked out of her office towards the yellow room. She wanted to look at the developer on the yellow room. That machine was going to be emptied out and put out of service until the BAE would come back with WPKS again. On her way back to her office she crossed the Annex-1 again and saw the huge SQDIP white board. The irony of Alphacoin. As she approached the corner where the timecard computer used to be, she saw Guy and Mark Rosato in a whispering secretive mode by her office. When they saw her, Mark turned around and went to the Tank Room. Ms. Marassi slowed down her pace to a full stop not to cross Guy Rosato who walked towards the front

office. **Guy looked at her face and rubbed his hand on the fly of his pants**. Ms. Marassi sent an email stating the following:

> "Per your request here are some of the incidents report:
>
> • It was reported that Guy Rosato was carrying a ladder near the time clock in the hallway and the ladder hit Julia on her backside. He was observed smirking, smiling and winking his eye to other employees that witnessed it.
> • It was reported that Guy Rosato was in the tank room carrying a thermometer and he held the thermometer up to Julia and said "here, put this in your mouth".
> • It was reported that Guy Rosato was in the tank room holding his cellphone up, showing a picture of his 90 year old uncle, telling Julia that his uncle is looking for a Brazilian girlfriend, asking her if she is interested.
> • It was reported that Guy Rosato was observed standing in Julia's doorway to her lab/office, blocking her ability to exit her lab/office.
> • He was also observed blocking the doorway to the supply and copyroom where James and Julia were getting supplies so they could not leave.

115.    In June of 2021 approximately a dozen employees reported incidents of harassment, belittling, and a hostile work environment put forth by Guy Rosato to the HR Director from Gasser and her assistant who were visiting the shop to do a meet and greet with the employees.

116.    Ms. Marassi has been continuously and systematically discriminated and retaliated against by her employer substantially because of and but for her gender, perceived sexual orientation, sex, race, national origin and protected activities to complaint about the same and because she complained to management about environmental working conditions. Ms. Marassi was also subjected to an extreme and outrageous hostile work environment because of the above protected traits and actions. The aforementioned facts detail an ongoing, continuous, pattern and practice of discrimination, as all of the factual allegations are interrelated and part of the same ongoing scheme to discriminate and retaliate against Plaintiff. On information and belief, Defendants Electroformings and Alphacoin terminated Guy Rosato on or about February 7, 2023 for his actions related to the continuous and ongoing pattern and practice of employment discrimination, retaliation and adverse actions experienced by Ms. Marassi.

## VI.    COUNT ONE:        UNLAWFUL SEX/GENDER DISCRIMINATION
##                         PURSUANT TO TITLE VII

117.    Paragraphs 1-116 are incorporated by reference herein.

118.    Ms. Marassi can successfully establish a prima facie case of employment discrimination

pursuant to Title VII of the 1964 Civil Rights Act (Title VII) against Defendants Electroformings

and Alphacoin based on gender by showing that: (1) that she was a member of a class (female)

and perceived sexual orientation; (2) that she was otherwise qualified for her position; (3) that

she suffered an adverse employment action when she was treated disparately and differently

from similarly situated male employees, subject to a hostile work environment, demoted,

retaliated against and terminated and (4) that the adverse employment actions occurred under

circumstances giving rise to an inference of gender, sex and perceived sexual orientation

discrimination.

119.    Defendants cannot and have not offered a legitimate non-discriminatory reason for

constructively terminating Ms. Marassi's employment. Based on Ms. Marassi's exemplary work

performance and in the absence of a single negative review or issue, any reason proffered is not

legitimate and a pretext for gender, sex and  perceived sexual orientation discrimination.

120.    Defendants favors and give preferential treatment to similarly situated employees who

are not female and maintained a workplace permeated with gender-based animus towards female

employees.

121.    Defendants Electroformings and Alphacoin are liable on this claim.

**VII.    COUNT TWO:        UNLAWFUL SEX/GENDER DISCRIMINATION PURSUANT TO CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT (CFEPA)**

122.    Paragraphs 1-121 are incorporated by reference herein.

123.    Ms. Marassi can successfully establish a prima facie case of employment discrimination pursuant to Connecticut's Fair Employment Practices Act (CFEPA) against Defendants Electroformings, Alphacoin and Rosato based on gender and sex by showing that: (1) that she was a member of a class (female) and perceived sexual orientation; (2) that she was otherwise qualified for her position; (3) that she suffered an adverse employment action when she was treated disparately and differently from similarly situated male employees, subject to a hostile work environment, demoted, retaliated against and terminated and (4) that the adverse employment actions occurred under circumstances giving rise to an inference of gender and sex discrimination.

124.    Defendants cannot and have not offered a legitimate non-discriminatory reason for constructively terminating Ms. Marassi's employment. Based on Ms. Marassi's exemplary work performance and in the absence of a single negative review or issue, any reason proffered is not legitimate and a pretext for gender, sex and perceived sexual orientation discrimination.

125.    Defendants favors and give preferential treatment to similarly situated employees who are not female and maintained a workplace permeated with gender-based animus towards female employees.

126.    Defendants Electroformings, Alphacoin and Rosato are liable on this claim.

**VIII.   COUNT THREE:    HOSTILE WORK ENVIRONMENT UNDER
                          TITLE VII**

127.    Paragraphs 1-126 are incorporated by reference herein.

128.    Ms. Marassi can successfully establish that she suffered a hostile work environment in

violation of Title VII of the 1964 Civil Rights Act ("Title VII") by showing that (1) her

workplace was permeated with discriminatory intimidation that was sufficiently severe and

pervasive (i.e., continuous) to alter the conditions of her employment on account of her gender,

sex,  perceived sexual orientation and protected activity to protest against discrimination and

that, (2) a specific basis exists for imputing the conduct that created the hostile environment to

Defendants Electroformings and Alphacoin.

129.    Ms. Marassi's work environment was permeated by an atmosphere of discriminatory

intimidation including daily hostile insulting and aggressive language and discriminatory and

retaliatory treatment from her supervisor and Defendants.

130.    The harassing and hostile behavior of Ms. Marassi's manager can be imputed to

Defendants because after the numerous occasions when Ms. Marassi reported specific incidents

of abusive and hostile behavior Defendants failed to address and remedy her complaints.

131.    Defendants Electroformings and Alphacoin are liable on this claim.

**IX.    COUNT FOUR:       HOSTILE WORK ENVIRONMENT UNDER CFEPA**

132.    Paragraphs 1-131 are incorporated by reference herein.

133.    Ms. Marassi can successfully establish that she suffered a hostile work environment in

violation of Connecticut's Fair Employment Practices Act ("CFEPA") by showing that (1) her

workplace was permeated with discriminatory intimidation that was sufficiently severe and

pervasive (i.e. continuous) to alter the conditions of her employment on account of her gender,

sex,  perceived sexual orientation and protected activity to protest against discrimination and that, (2) a specific basis exists for imputing the conduct that created the hostile environment to Defendants Electroformings, Alphacoin and Rosato.

134.    Ms. Marassi's work environment was permeated by an atmosphere of discriminatory intimidation including daily hostile insulting and aggressive language and discriminatory and retaliatory treatment from her supervisor and Defendant.

135.    The harassing and hostile behavior of Ms. Marassi's manager can be imputed to Defendants because after the numerous occasions when Ms. Marassi reported specific incidents of abusive and hostile behavior Defendants failed to address and remedy her complaints.

136.    Defendants Electroformings, Alphacoin and Rosato are liable on this claim.

**X.    COUNT FIVE:    HOSTILE WORK ENVIRONMENT UNDER 42 U.S.C. § 1981**

137.    Paragraphs 1-136 are incorporated by reference herein.

138.    Ms. Marassi can successfully establish that she suffered a hostile work environment in violation of 42 U.S.C. § 1981 by showing that (1) her workplace was permeated with discriminatory intimidation that was sufficiently severe and pervasive (i.e. continuous) to alter the conditions of her employment on account of her gender, sex,  perceived sexual orientation and protected activity to protest against discrimination and that, (2) a specific basis exists for imputing the conduct that created the hostile environment to Defendants Electroformings, Alphacoin and Rosato.

139.    Ms. Marassi's work environment was permeated by an atmosphere of discriminatory intimidation including daily hostile insulting and aggressive language and discriminatory and retaliatory treatment from her supervisor and Defendants.

140.    The harassing and hostile behavior of Ms. Marassi's manager can be imputed to

Defendant because after the numerous occasions when Ms. Marassi reported specific incidents of abusive and hostile behavior Defendant failed to address and remedy her complaints.

141.    Defendants Electroformings, Alphacoin and Rosato are liable on this claim.

## XI.    COUNT SIX:        RETALIATION PURSUANT TO TITLE VII

142.    Paragraphs 1-141 are incorporated by reference herein.

143.    Ms. Marassi engaged in protective activity on the multiple occasions when she complained of discrimination to Defendants Electroformings and Alphacoin, pursuant to Title VII of the 1964 Civil Rights Act ("Title VII").

144.    Defendants retaliated against Ms. Marassi by continuously subjecting her to willful adverse employment actions throughout her tenure of employment leading up to her constructive termination.

145.    A clear and close causal connection exists between Ms. Marassi's complaints, and the continuous and connected adverse actions taken against her throughout her tenure of employment leading up to her constructive termination.

146.    Defendants Electroformings and Alphacoin are liable on this claim.

## XII.    COUNT SEVEN:        RETALIATION PURSUANT TO
                            42 U.S.C. § 1981

147.    Paragraphs 1-146 are incorporated by reference herein.

148.    Ms. Marassi engaged in protective activity on the multiple occasions when she complained of discrimination to Defendants Electroformings, Alphacoin and Rosato, pursuant to 42 U.S.C. § 1981.

149.    Defendants retaliated against Ms. Marassi by continuously subjecting her to willful adverse employment actions throughout her tenure of employment leading up to her constructive termination.

150.    A clear and close causal connection exists between Ms. Marassi's complaints, and the continuous and connected adverse actions taken against her throughout her tenure of employment leading up to her constructive termination.

151.    Defendants Electroformings, Alphacoin and Rosato are liable on this claim.

**XIII.    COUNT EIGHT:    RETALIATION PURSUANT TO CONNECTICUT'S FAIR EMPLOYMENT PRACTICES ACT (CFEPA)**

152.    Paragraphs 1-151 are incorporated by reference herein.

153.    Ms. Marassi engaged in protective activity on the multiple occasions when she complained of discrimination to Defendants Electroformings, Alphacoin and Rosato, pursuant to the Connecticut Fair Employment Practices Act ("CFEPA").

154.    Defendants retaliated against Ms. Marassi by continuously subjecting her to willful adverse employment actions throughout her tenure of employment leading up to her constructive termination.

155.    A clear and close causal connection exists between Ms. Marassi's complaints, and the continuous and connected adverse actions taken against her throughout her tenure of employment leading up to her constructive termination.

156.    Defendants Electroformings, Alphacoin and Rosato are liable on this claim.

**XIV.    COUNT NINE:         RACE AND NATIONAL ORIGIN DISCRIMINATION
                                        PURSUANT TO 42 U.S.C. § 1981**

157.    Paragraphs 1-156 are incorporated by reference herein.

158.    Ms. Marassi asserts her 42 U.S.C. § 1981 claim against the following Defendants

Electroformings, Alphacoin and Rosato. Defendants' conduct, by and through its agents, in

treating Ms. Marassi in the manner unequal to other employees, discriminatorily denied Ms.

Marassi equal treatment in the terms, conditions and privileges of her employment on the basis

of her race and national origin in violation of 42 U.S.C. § 1981.

159.    Defendants in failing to adequately investigate and remedy the treatment to Ms. Marassi,

despite the Defendants' knowledge of the conduct, discriminatorily denied Ms. Marassi equal

treatment on the basis of race and national origin in violation of 42 U.S.C. § 1981 in the terms,

conditions and privileges of her employment.  Ms. Marassi was intentionally and willfully

subjected to a racially and national origin motivated hostile work environment that was

permeated with discriminatory intimidation, ridicule and insult. The harassment Ms. Marassi

experienced was sufficiently severe and/or pervasive so as to adversely alter her working

conditions and cause her intentional emotional distress, physical sickness, depressed feeling and

physical harm.

160.    The discriminatory acts of the Defendants as described above were intentional and were

substantially motivated on the basis of Ms. Marassi's race and national origin. The Defendants

engaged in a pattern and practice of continuous intentional and willful discrimination, which was

the Defendants' standard operating procedure. The Defendants subjected Ms. Marassi to a hostile

work environment. Ms. Marassi's workplace was permeated with discriminatory intimidation

that was sufficiently severe and pervasive to alter the conditions of her work environment. There

further exists a specific basis for imputing the conduct that created the hostile environment to the employer, as the adverse actions experienced by Ms. Marassi were caused solely by her supervisors and higher level managing executives. All of the actions that occurred within this time period were part of one continuous ongoing hostile and discriminatory work environment perpetuated by the Defendants because of Ms. Marassi's race and national origin, such that collectively the adverse employment actions constitute one continuous and unlawful employment practice.

161.    Ms. Marassi at all times was qualified for her positions she held with Defendants.

162.    As a result of the Defendants' conduct, Ms. Marassi has suffered and will continue to suffer past and future economic, physical and emotional harm.

163.    Defendants Electroformings, Alphacoin and Rosato are liable on this claim.

## XV.    COUNT TEN:        RACE AND NATIONAL ORIGIN DISCRIMINATION PURSUANT TO TITLE VIII

164.    Paragraphs 1-163 are incorporated by reference herein.

165.    Ms. Marassi asserts her Title VII claim against the following Defendants Electroformings and Alphacoin. Defendants' conduct, by and through its agents, in treating Ms. Marassi in the manner unequal to other employees, discriminatorily denied Ms. Marassi equal treatment in the terms, conditions and privileges of her employment on the basis of her race and national origin in violation of Title VII, 42 U.S.C. § 2000e et.seq.

166.    Defendants in failing to adequately investigate and remedy the treatment to Ms. Marassi, despite the Defendants' knowledge of the conduct, discriminatorily denied Ms. Marassi equal treatment on the basis of race and national origin in violation of Title VII in the terms, conditions

and privileges of her employment. Ms. Marassi was intentionally and willfully subjected to a racially and national origin motivated hostile work environment that was permeated with discriminatory intimidation, ridicule and insult. The harassment Ms. Marassi experienced was sufficiently severe and/or pervasive so as to adversely alter her working conditions and cause her intentional emotional distress, physical sickness, depressed feeling and physical harm.

167.    The discriminatory acts of the Defendants as described above were intentional and were substantially motivated on the basis of Ms. Marassi's race and national origin. The Defendants engaged in a pattern and practice of continuous intentional and willful discrimination, which was the Defendants' standard operating procedure. The Defendants subjected Ms. Marassi to a hostile work environment. Ms. Marassi's workplace was permeated with discriminatory intimidation that was sufficiently severe and pervasive to alter the conditions of her work environment. There further exists a specific basis for imputing the conduct that created the hostile environment to the employer, as the adverse actions experienced by Ms. Marassi were caused solely by her supervisors and higher level managing executives. All of the actions that occurred within this time period were part of one continuous ongoing hostile and discriminatory work environment perpetuated by the Defendants because of Ms. Marassi's race and national origin, such that collectively the adverse employment actions constitute one continuous and unlawful employment practice.

168.     Ms. Marassi at all times was qualified for her positions she held with Defendants.

169.    As a result of the Defendants' conduct, Ms. Marassi has suffered and will continue to suffer past and future economic, physical and emotional harm.

170.    Defendants Electroformings and Alphacoin are liable on this claim.

## XVI.    COUNT ELEVEN:    RACE AND NATIONAL ORIGIN DISCRIMINATION

171.    Paragraphs 1-170 are incorporated by reference herein.

172.    Ms. Marassi asserts her Conn. Gen. Stat. § 46a-60 et.seq. ("CFEPA") claim against the following Defendants Electroformings, Alphacoin and Rosato. Defendants' conduct, by and through its agents, in treating Ms. Marassi in the manner unequal to other employees, discriminatorily denied Ms. Marassi equal treatment in the terms, conditions and privileges of her employment on the basis of her race and national origin in violation of Conn. Gen. Stat. § 46a-60 et.seq.

173.    Defendants in failing to adequately investigate and remedy the treatment to Ms. Marassi, despite the Defendants' knowledge of the conduct, discriminatorily denied Ms. Marassi equal treatment on the basis of race and national origin in violation of Conn. Gen. Stat. § 46a-60 et.seq. in the terms, conditions and privileges of her employment.  Ms. Marassi was intentionally and willfully  subjected to a racially and national origin motivated hostile work environment that was permeated with discriminatory intimidation, ridicule and insult. The harassment Ms. Marassi experienced was sufficiently severe and/or pervasive so as to adversely alter her working conditions and cause her intentional emotional distress, physical sickness, depressed feeling and physical harm.

174.    The discriminatory acts of the Defendants as described above were intentional and were substantially motivated on the basis of Ms. Marassi's race and national origin. The Defendants engaged in a pattern and practice of continuous intentional and willful discrimination, which was the Defendants' standard operating procedure. The Defendants subjected Ms. Marassi to a hostile work environment. Ms. Marassi's workplace was permeated with discriminatory intimidation that was sufficiently severe and pervasive to alter the conditions of her work environment. There

further exists a specific basis for imputing the conduct that created the hostile environment to the employer, as the adverse actions experienced by Ms. Marassi were caused solely by her supervisors and higher level managing executives. All of the actions that occurred within this time period were part of one continuous ongoing hostile and discriminatory work environment perpetuated by the Defendants because of Ms. Marassi's race and national origin, such that collectively the adverse employment actions constitute one continuous and unlawful employment practice.

175.    Ms. Marassi at all times was qualified for her positions she held with Defendants.

176.    As a result of the Defendants' conduct, Ms. Marassi has suffered and will continue to suffer past and future economic, physical and emotional harm.

177.    Defendants Electroformings, Alphacoin and Rosato are liable on this claim.

## XVII.  COUNT TWELVE:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

178.    Paragraphs 1-177 are hereby incorporated by reference herein.

179.    Ms. Marassi can successfully establish a prima facie case of intentional infliction of emotional distress against Defendants by showing that: (1) Defendants knew or should have known that emotional distress was a likely result of Defendants ongoing and continuous pattern and practice of discriminatory and retaliatory conduct towards Ms. Marassi; (2) Defendants intentional discriminatory and retaliatory conduct resulted in Ms. Marassi's adverse employment actions and unlawful constructive termination; (3) Defendants conduct caused Ms. Marassi extreme emotional distress.

180.    Defendants persistent and pervasive conduct to which Ms. Marassi was subjected every day during the tenure of employment was intentional and so severe that Defendants should have

known that it would result in extreme emotional distress, and in fact it did result in Ms. Marassi's

extreme emotional distress.

181.    Defendants Electroformings, Alphacoin and Rosato are liable on this claim.


XVIII. COUNT THIRTEEN:        WHISTLEBLOWER RETALIATION PURSUANT TO
                              CONN.GEN. STAT. § 31-51Q AGAINST ALL
                              DEFENDANTS

182.    Paragraphs 1-182 are hereby incorporated by reference herein.

183.    Defendants illegally retaliated against Ms. Marassi because she engaged in activity

protected by Conn. Gen. Stat. § 31-51q.

184.    Ms. Marassi's repeated internal complaints to Defendants about health and safety issues

involving employees, including personal protective equipment and exhaust equipment involved

matters of public concern and is considered protected speech.

185.    Ms. Marassi's protected speech did not in any way interfere with her job performance or

his working relationship with Defendants. Ms. Marassi continued performing her job duties

before and after she complained.

186.    Ms. Marassi hoped her complaints would serve to remedy and/or shed light on the

situation and cause the Defendants to fix the health and safety issues she was complaining about.

Defendants had knowledge of Ms. Marassi' protected conduct and, in violation of Section 31-

51q, Defendants intentionally subjected Ms. Marassi to unlawful retaliation.

187.    Ms. Marassi's protected speech involved matters of public concern in that the Defendants

operated a place of business and employment and was required to protect the health and safety of

all employees who worked there, including Ms. Marassi.

188.    Ms. Marassi has demonstrated that the Defendants failed to remedy the health and safety issues she brought to their attention.

189.    Ms. Marassi's protected speech did not involve matters related to the terms and conditions of her own employment or personal to herself.

190.    Ms. Marassi's complaints to Defendants were based on a good faith belief that Defendants failed to remedy the health and safety issues and employees were being harmed.

191.    Defendants intentionally retaliated against Ms. Marassi, on an ongoing and continuous basis, when they treated her adversely throughout her tenure of employment and constructively discharged her.

192.    There is a close causal connection between Ms. Marassi's protected activities and the adverse employment actions and retaliation committed by Defendants.

193.    As a direct result of Defendants' intentional conduct toward Ms. Marassi, Ms. Marassi has suffered significant losses, including, but not limited to, constructive discharge from employment, emotional distress, embarrassment, mental anguish, humiliation, damage to her reputation, loss of enjoyment of life, loss of enjoyment of her professional life and economic loss.

194.    Defendants exhibited reckless indifference to Ms. Marassi's employment rights, or an intentional and wanton violation of Ms. Marassi's rights when they unlawfully and knowingly retaliated against her.

195.    Defendants Electroformings, Alphacoin and Rosato are liable on this claim.

## XIX.    COUNT FOURTEEN:    BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AS AGAINST ALL DEFENDANTS

196.    Paragraphs 1-195 are hereby incorporated by reference herein.

197.    Ms. Marassi was employed as an at-will employee with the Defendants.

198.    Defendants had a duty to use good faith and fair dealing when interacting with Ms. Marassi concerning the terms, conditions and privileges of her employment.

199.    Ms. Marassi justifiably relied on Defendants to abide by its contractual obligations, including but not limited to her expectation to be treated fairly and in a good faith manner.

200.    Defendants intentionally and willfully breached their duty to act in a good faith manner with Ms. Marassi when Defendants discriminated, on an ongoing and to continuous basis, against her because of her sex, gender, perceived sexual orientation, race, national origin, protected activities, and constructively discharged her.

201.    As a result of Defendants' breach of their duty of good faith and fair dealing that they owed to Ms. Marassi, Ms. Marassi has been and continues to be damaged in an amount to be determined at trial.

202.    Defendants Electroformings, Alphacoin and Rosato are liable on this claim.

## XX.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby requests the following relief:

A.    Award compensatory damages;

B.    Award punitive damages;

C.    Award attorneys' fees and costs;

D.    Award pre-judgement interest;

E.      Award post-judgement interest;

F.      Award such other relief in law or equity as this Court deems appropriate.

## **JURY TRIAL DEMANDED**

Ms. Marassi respectfully requests a jury trial on all questions of fact raised by her Complaint.

Respectfully Submitted,
PLAINTIFF
JULIE MARASSI

By:/s/ Mark P. Carey
Mark P. Carey (ct413729)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel
(203) 255-0380 fax
mcarey@capclaw.com

# EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Boston Area Office**
15 New Dudbury St, Room 475
Boston, MA 02203
(617) 865-3670
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 12/02/2022

**To:** Anna Julia Marassi
3 Vera Drive
Bethel, CT 06801
Charge No: 523-2023-00135

EEOC Representative and email:    Susan Boscia
Investigator
Susan.Boscia@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 523-2023-00135.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
12/02/2022

Timothy Riera
Acting District Director

**Cc:**

Andres  Jimenez-Franck
Ogletree Deakins
281 TRESSER BLVD STE 602
Stamford, CT 06901

Annabelle  Torres
Ogletree Deakins
281 TRESSER BLVD STE 602
Stamford, CT 06901

John G Stretton
Ogletree Deakins
281 TRESSER BLVD STE 602
Stamford, CT 06901

Susan Seyfried
Mark Carey & Associates,  P.C.
sseyfried@capclaw.com

Mark Carey
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890

Chris Avcollie
Mark Carey & Associates,  P.C.
cavcollie@capclaw.com

Please retain this notice for your records.

# EXHIBIT B

**STATE OF CONNECTICUT**

**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

Anna Julia Marassi
COMPLAINANT

CHRO No. 2320116

vs.

EEOC No. 523-2022-00135

 Electroforming, LLC
RESPONDENT

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

*Tanya A Hughes*

DATE: December 23, 2022
mrm

Tanya A. Hughes, Executive Director

Service: **VIA EMAIL**
Complainant's Attorney: Mark P. Carey, mcarey@capclaw.com
Respondent Attorney: John Stretton, john.stretton@ogletreedeakins.com

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Anna Julia Marassi
COMPLAINANT

CHRO No. 2320117

EEOC No. 523-2022-00135

vs.

AlphaCoin, LLC
RESPONDENT

### RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

<u>The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.</u>

DATE: December 23, 2022
mrm

Tanya A. Hughes, Executive Director

Service:    **VIA EMAIL**
Complainant's Attorney: Mark P. Carey, mcarey@capclaw.com
Respondent Attorney: John Stretton, john.stretton@ogletreedeakins.com

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Anna Julia Marassi
COMPLAINANT

CHRO No. 2320118

EEOC No. NA

vs.

Guy Rosado
RESPONDENT

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

DATE: December 23, 2022
mrm

Tanya A. Hughes, Executive Director

Service:   **VIA EMAIL**
Complainant's Attorney: Mark P. Carey, mcarey@capclaw.com
Respondent Attorney: Andrew A. Cohen, andrew@andrewcohenlaw.com